## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MAINE

In re:

Christopher D. Gistis,

              Debtor

Chapter 7
Case No. 18-10710

## ORDER IMPOSING SANCTIONS

Jeffrey P. White was a member of the bar of this Court for decades, providing services to

many debtors, mostly individuals in chapter 7 and 13 cases. In recent years, Mr. White found

himself on the defensive before disciplinary authorities on multiple occasions. That disciplinary

history ended with a nine-month suspension from the practice of law. Shortly before that

suspension began, Mr. White assisted the Debtor with the commencement of this chapter 7 case.

Roughly six months later, the Trustee moved the Court for an order imposing sanctions on Mr.

White, alleging that he violated certain provisions of the Bankruptcy Code and the Federal Rules of

Bankruptcy Procedure. After an evidentiary hearing, the Court agreed with the Trustee in some

respects, but not others. Now, after considering the evidence, along with the stipulated record and

post-hearing briefs, the Court concludes that sanctions are warranted.

### BACKGROUND

When the Trustee filed his motion in July 2019, he asked the Court to impose sanctions

against Mr. White including the "disgorgement of all fees paid in this case" and "an award of the

attorneys' fees and costs associated with the Trustee's investigation and pursuit of this matter[.]"

[Dkt. No. 28.] In support of this request, the Trustee invoked multiple authorities: 11 U.S.C. §§

105(a) and 707(b)(4), Fed. R. Bankr. P. 9011, and this Court's inherent powers. The Trustee

claimed that Mr. White violated Fed. R. Bankr. P. 9011(b) and 11 U.S.C. § 707(b)(4)(D) when

he filed several documents in this case, including Schedule C, Schedule G, and the Statement of

Intent.  Although the Trustee did "not believe or concede the so-called 'safe harbor' provisions

of Federal Rule of Bankruptcy Procedure 9011 appl[ied]" he "served a copy of [the] Motion for

Sanctions in substantially the same form upon Jeffrey P. White, Esq. as provided for in Federal

Rule[s] of Bankruptcy Procedure[] 7004, 9006, & 9011."  [Dkt. No. 28, ¶ 42.]

     In response, Mr. White denied that his conduct in this case fell short of the obligations

imposed by Rule 9011(b) and section 707(b)(4)(D).  He admitted that the Trustee served a draft

of the motion on him before the motion was filed with the Court.  He did not assert that the

Trustee had failed to comply with the Rule 9011 safe harbor.

     The Court bifurcated the contested matter into two stages:  First, the Court would

determine whether Mr. White had engaged in sanctionable conduct.  Then, if appropriate, the

Court would determine the nature and extent of any sanction to be imposed.  In the pretrial

phase—which included several hearings regarding discovery and a pretrial conference—Mr.

White did not raise the Rule 9011 safe harbor as a defense to the Trustee's motion.  He did not

draw the Court's attention to the amended Schedule C that had been filed in May 2019, after Mr.

White withdrew from his representation of the Debtor and before the Trustee filed his motion for

sanctions.  *See* [Dkt. No. 24].

     At trial, Mr. White attempted to justify the residence exemption claimed in the original

Schedule C by citing In re Bennett, 192 B.R. 584 (Bankr. D. Me. 1996).  That decision, which

focuses on the concept of constructive occupancy, does not support the exemption claimed in

this case.  In Bennett, the debtors demonstrated no immediate ability to occupy the property as to

which the exemption was claimed; they planned to move there, but their plans were uncertain.

*See* id. at 586-88.  Under the circumstances, the trustee's objection to their claimed exemption

was sustained.  Id. at 588.  Here—as the Court previously found—there was no reasonable basis

for Mr. White to believe that the Debtor or his dependents had any plans to move to the property

claimed as exempt.  The residence exemption was not justified under Bennett or any other

cognizable legal theory.

      After trial, the Court issued a decision, making findings and conclusions that are fully

incorporated, but not entirely reproduced, here.  See [Dkt. No. 74].  In that decision, the Court

determined that Mr. White violated Rule 9011(b) and section 707(b)(4)(D) when he filed

Schedule C in this case because he knew or should have known that the Debtor had no

reasonable basis to claim the residence exemption.  Id.  In light of this Court's Administrative

Procedures for the filing of documents on the ECF system, the Court also concluded that Mr.

White had improperly affixed the Debtor's electronic signature to the petition, schedules, and

statements dated December 12, 2018, one month after the Debtor himself executed the original

version of those documents.  Id. n.2.  As for the other shortcomings alleged by the Trustee, the

Court did not find a violation of the Code or the Rules but agreed that Mr. White should have

been more careful when gathering information from the Debtor and then incorporating that

information into the documents filed with the Court.  Id.

      Unfortunately, Mr. White's failure to observe the rules and procedures applicable to him

in this case was part of a larger pattern of deficient practice before this Court—a pattern

particularly troubling in light of Mr. White's substantial experience as an attorney generally and

in the bankruptcy system in particular.  This finding (namely, that Mr. White engaged in a

pattern of deficient practice) is informed by this Court's experience with cases in which Mr.

White served as counsel, including the following examples:

- In 2016, after Mr. White failed to appear for a hearing on confirmation of his clients' chapter 13 plan and failed to file a proposed form of confirmation order by the deadline,

- 3 -

the Court extended the deadline and imposed a small monetary sanction against Mr.
White payable if the form of order was not filed by the extended deadline. *See* Case No.
15-20854, Dkt. No. 31.

- That same year, Mr. White commenced a chapter 13 case for a debtor who was
  prohibited from filing by an order of the Court entered in a prior case, and the debtor
  obtained the benefits of a stay to which he was not entitled. The chapter 13 case was
  later dismissed, with the Court retaining jurisdiction to determine whether Mr. White
  should be required to disgorge his fees and whether any other sanction was appropriate.
  Mr. White assured the Court that his failure to discover the bar on refiling had not been
  intentional and resolved the order to show cause by disgorging the fees paid by the
  debtor. *See* Case No. 16-20023, Dkt. Nos. 20, 25 & 26.[1]

- Also in 2016, the Court dismissed a chapter 7 case due to the debtors' failure to file the
  certificates of credit counseling. Mr. White moved to vacate the dismissal order,
  asserting that the credit counseling had been completed prepetition, and that he had failed
  to file the certificates through inadvertence. After a hearing, the Court granted that
  motion "with considerable reluctance" and vacated the order of dismissal. *See* Case No.
  16-20332, Dkt. Nos. 15, 16, 25 & 26.

These specific examples—all involving Mr. White's failure to observe deadlines or Court orders

followed by apologetic excuses of innocent inadvertence—are illustrative of the problems that

have beset his practice before this Court for some time.

This pattern of deficient practice is also described in the Findings, Conclusions and Order

[Dkt. No. 86 Ex. D] and the Sanctions Order [Dkt. No. 86 Ex. E] issued by the Maine Supreme

Judicial Court in Mr. White's disciplinary proceedings. The parties have stipulated to the

inclusion of these orders in the record of this contested matter, and Mr. White's disciplinary

history features prominently in the parties' arguments about the propriety of sanctions here. The

following summary of the Law Court's findings and conclusions informs this Court's response to

those arguments.

- Prior to his suspension, Mr. White practiced law for 37 years. He had considerable
  experience in bankruptcy matters, with nearly all of his practice devoted to bankruptcies.

---

[1]    Although this particular chapter 13 case was not assigned to this judicial officer, the Court takes
judicial notice of the contents of the docket and the audio of the hearings before Chief Judge Cary.

- In 2013, Mr. White was retained to defend a foreclosure action. He did not defend the action or perform any other work for the clients, and then failed to return the unused retainer when the clients asked for a refund in 2015. Later, after the clients filed a complaint with the Board of Overseers of the Bar, Mr. White refunded the retainer, and advised that workload and staffing issues had caused the delay. When testifying before the Law Court about the matter, Mr. White falsely stated that the clients had retained him to proceed with a bankruptcy if their unrepresented defense of the foreclosure action was unsuccessful. The Law Court concluded that Mr. White's conduct in the matter violated a number of the Maine Rules of Professional Conduct, including Rule 8.4(c), concerning dishonesty, deceit, or misrepresentation.

- In a non-bankruptcy matter, Mr. White failed to do the work that he was engaged to do, or to return the retainer for that work upon request. When the clients filed a complaint with the Board, Mr. White described that complaint as a "clarion call" to improve his communication with clients and reduce his caseload. The Law Court determined that Mr. White's dilatory conduct in that matter violated a number of the Maine Rules of Professional Conduct, including Rule 1.4(a) relating to client communication.

- In 2015, Mr. White was retained as chapter 11 counsel, and agreed to a retainer of $25,000 to $30,000 to be paid at a monthly rate of $7,500. Mr. White received an initial payment of $7,500 prior to filing the case. After receiving a second payment of $7,500 post-petition, Mr. White filed an application to employ himself as counsel, disclosing the prepetition payment, but not the post-petition payment or the total commitment of $25,000 to $30,000. Mr. White then caused or approved a deposit of that second payment into his business operating account, rather than the firm's trust account, without approval from this Court. When these matters were brought to this Court's attention on motion by the U.S. Trustee, Mr. White agreed to (i) pay a sanction of $500 to a legal aid organization; and (ii) participate in a continuing legal education program targeted toward office management for a solo practitioner or small firm.[2] In the subsequent disciplinary proceedings, the Law Court determined that Mr. White's actions in the chapter 11 case violated Fed. R. Bankr. P. 2016 and D. Me. LBR 2016-1 and multiple provisions of the Maine Rules of Professional Conduct, including Rule 3.3(a) relating to candor toward the tribunal, Rule 4.1(a) pertaining to false statements of material fact, and Rule 8.4(c) concerning deceit or misrepresentation.

- In 2016, while representing a corporation in a chapter 11 case, Mr. White presented to the Court an affidavit purportedly signed by his client's principal and acknowledged by him. This took place during an evidentiary hearing. At the hearing, the client principal testified that although she had reviewed the information in the affidavit with Mr. White by telephone, and agreed with the contents of the affidavit, she had neither seen it nor signed it. In proceedings before the Board, Mr. White admitted that he submitted the document purporting to be a signed affidavit, even though it was never actually signed by his client. The Law Court concluded that Mr. White's submission of the affidavit

---

[2] Although the Law Court did not describe the nature of this stipulated sanction, the Court takes judicial notice of its own order in Case No. 16-10005, at Dkt. No. 54.

violated Maine Rules of Professional Conduct 3.3(a) governing candor toward a tribunal, 3.4(b) pertaining to the falsification of evidence, and 4.1(a) relating to truthfulness in statements to others.

- For Mr. White's conduct in submission of the affidavit purportedly, but not actually, signed by his client's principal, the Law Court issued a public reprimand.

- For the other conduct described above, the Law Court suspended Mr. White from the practice of law for a period of nine months. In fashioning this sanction, the Court reasoned that Mr. White's prior brushes with the disciplinary process, which resulted in dismissals with warnings, demonstrated that Mr. White's poor management practices were longstanding and endured despite those warnings. This longstanding pattern of shoddy practice management served as a significant aggravating factor. In eschewing the Board's recommended sanction including a period of probation and monitoring, the Law Court noted that Mr. White's "apparently limited resources" suggested an inability to fund that service. [Dkt. No. 86 Ex. E.]

In his brief, the Trustee asks the Court to impose a significant sanction against Mr. White, and award to the Trustee on behalf of the estate not less than $10,000. [Dkt. No. 87.] This figure is derived from the parties' stipulation that the estate has incurred no less than $10,000 in legal fees in connection with the Trustee's prosecution of the sanctions motion. [Dkt. No. 86, ¶ 8.][3] The Trustee contends that a substantial monetary sanction is warranted because Mr. White made unfounded representations to courts on several other occasions, and that conduct was part of the pattern of problematic behavior that led to his suspension from practice. The Trustee further asserts that a significant sanction will discourage similar conduct by other attorneys.

Mr. White's brief advances the view that no sanction may be imposed under Rule 9011(c). He asserts that the unsupported homestead exemption was withdrawn when the amended Schedule C was filed, and that the safe harbor consequently bars the Trustee's request. Beyond that, Mr. White contends that monetary sanctions are unjustified because he did not

---

[3]    The record contains no other details about the services provided, or the amount of time spent by the Trustee on the various aspects of this litigation. But the Court observes that in 2020 the Trustee has generally charged a billable rate of $325 per hour for his services as counsel. *See* Case No. 19-10648, Dkt. No. 9, ¶ 14. In 2019, the Trustee's services as counsel were billed at the rate of $315 per hour. *See* Case No. 19-10111, Dkt. No. 12, ¶ 14.

intentionally submit an unsupported claim, and that claim did not cause any harm. Mr. White

seeks to distinguish the conduct featured in his disciplinary history and asserts that if that history

serves as "the basis for imposing sanctions in this case" he will effectively be "punish[ed] . . .

twice for the same offenses." [Dkt. No. 88.] Finally, Mr. White contends that legal fees may not

be awarded because the Trustee has not established the amount of the fees fairly ascribable to the

unsupported residence exemption—the conduct that violated Rule 9011(b)—as opposed to the

other conduct targeted by the Trustee.

## ANALYSIS

There are two aspects of Mr. White's conduct in this case that merit sanctions. The first

is his violation of the Court's Administrative Procedures for the filing of documents on the ECF

system. In relevant part, the Administrative Procedures provide:

<u>Signatures</u>

1. Petitions, lists, schedules, statements, amendments, pleadings, affidavits, and
   other documents which must contain original signatures . . . shall be filed
   electronically and in accordance with these Administrative Procedures. The
   electronically filed document shall indicate a signature with the party's name
   typed in full, *e.g.*, "/s/ Jane Doe." Original, executed documents that contain
   the signature of a party *other than the registered filer* must be maintained by
   the filer until two (2) years following the closing of the case or the expiration
   of all appeal periods, whichever is later. Upon request of the Court or any
   interested party, the filer must provide original documents for review.

2. For a stipulation or other document to be signed by two or more persons:

   (i) The filing party shall file the document electronically, indicating the
       signatories, e.g., "/s/ Jane Doe," "/s/ John Doe," etc.

   (ii) By submitting such a document, the filing attorney certifies that each of
        the other signatories has expressly agreed to the form and substance of the
        document and that the filing attorney has their actual authority to submit
        the document electronically.

   (iii) The filing party shall retain any records evidencing this concurrence for
         future production, if necessary, in accordance with subparagraph II(D)(1)

above.  A non-filing signatory or party who disputes the authenticity of an
electronically filed document must file an objection to the document
within ten days of the date on the Notice of Electronic Filing.

Administrative Procedures for Filing, Signing, Maintaining and Verifying Pleadings and Other

Documents in the Electronic Case Filing (ECF) System § II(D) (March 2011).

In this case, Mr. White ran afoul of these procedures by affixing the Debtor's electronic

signature to the petition, schedules, and statements and dating those documents December 12,

2018, one month after the Debtor himself signed and dated the petition, schedules, and

statements.  Mr. White did not have an original set of documents signed by the Debtor and dated

December 12, but he improperly represented that he did when he commenced this case.

As the days passed between the date that the Debtor signed the documents (in mid-

November 2018) and the date that Mr. White filed them (December 12, 2018), the Debtor's

circumstances changed and some of the information on the schedules and statements became

inaccurate.  During this period, Mr. White's suspension became imminent.  He filed the case in

haste, without securing updated signatures or effectively engaging the Debtor in a thorough

review of the schedules.  The Court infers from Mr. White's testimony that he filed the case on

the eve of his suspension without taking the necessary care to secure updated signatures from the

client because he had already expended a substantial amount of work in a fixed fee case.  By

commencing the case without taking the care necessary to ensure the accuracy of the

representations in the documents filed with the Court, Mr. White put his own economic interests

ahead of his obligations to the Court.

A sanction for this conduct is warranted to vindicate the Court's authority to manage the

commencement of cases by way of electronic filing.  Debtors' counsel frequently face pressure

to file petitions to halt foreclosures or the exercise of other creditor remedies.  In some cases,

counsel may put many prepetition hours into a case and review numerous iterations of the

schedules and statements with a client.  But, regardless of the time pressures and other

exigencies of practice faced by debtors' counsel, the requirements of client review and signature

must be observed.  The integrity of the bankruptcy system depends upon and demands accurate

information in the petition, schedules, and statements.  None of the participants in the system

should have to question whether documents filed with the Court were, in fact, signed or whether

they were signed on a date different from the date electronically affixed to them.  To reinforce

this message, imposition of a sanction under 11 U.S.C. § 105(a) and the Court's inherent powers

is appropriate.

Section 105(a) may "serve as a source of authority for the bankruptcy court's imposition

of sanctions in an appropriate case." Resurgent Capital Servs., L.P. v. Harrington (In re

Cushman), 589 B.R. 469, 500 (Bankr. D. Me. 2018) (quotation marks omitted).

> Specifically, a court may invoke § 105(a) if the equitable remedy utilized is
> demonstrably necessary to preserve a right elsewhere provided in the Code, so
> long as the court acts consistent with the Code and does not alter the Code's
> distribution of other substantive rights.  For example, section 105(a) may
> appropriately be used to enforce a specific code provision, such as the discharge
> injunction of section 524.  In the absence of an antecedent violation of the Code
> or a related court order, section 105(a) will not ordinarily provide a basis for
> sanctions.

Id. (quotation marks omitted).  In addition to the authority conferred by section 105(a), the Court

has "certain inherent powers, not conferred by rule or statute, to manage [its] own affairs so as to

achieve the orderly and expeditious disposition of cases." Id. at 501 (quotation marks omitted);

accord Charbono v. Sumski (In re Charbono), 790 F.3d 80, 86-87 (1st Cir. 2015) ("[B]ankruptcy

courts . . . by the nature of their institution must possess inherent power sufficient to manage

their own affairs and impose . . . submission to their lawful mandates.") (quotation marks

omitted).  "'That authority includes the ability to fashion an appropriate sanction for conduct

which abuses the judicial process[,]' such as failure to comply with a court order[.]"  <u>In re</u> <u>Cushman</u>, 589 B.R. at 501 (quoting <u>In re Charbono</u>, 790 F.3d at 83).

The Administrative Procedures for the filing of documents on the ECF system is akin to an order of the Court—a uniform procedure that all attorneys must observe in order to file documents with the Court.  *See* Standing Order Re the Electronic Filing of Pleadings and Papers in the District of Maine (Bankr. D. Me. Nov. 7, 2003) (requiring, in general, documents filed with the Court to be filed electronically through the ECF system); Standing Order Re Administrative Procedures for Electronically Filed Cases (Bankr. D. Me. Aug. 12, 2002) (approving the Administrative Procedures and providing that they "shall govern the use of the [ECF] system" including "filing" and "signature maintenance").  Effective implementation of the ECF system provided the justification for the Court's adoption of the Administrative Procedures, and electronic filing was mandated for most filings made by represented parties due to the benefits provided by a wholly electronic system.  *See* Standing Order Re Electronic Filing (Nov. 7, 2003); Standing Order Re Administrative Procedures (Aug. 12, 2002).  These procedures were adopted to further the orderly and expeditious administration of cases.  Those goals are undermined, and the judicial process is abused by conduct like that at issue here.

In fashioning a sanction for Mr. White's violation of the Administrative Procedures, the Court is mindful of several factors.  First, Mr. White was a member of the bar of this Court when these procedures were adopted.  He practiced here for many years and cannot claim ignorance of the signature retention provisions of Administrative Procedures or the Standing Orders adopting those procedures.  Second, the signature retention provisions are sufficiently specific to support an award of sanctions.  *Cf.* <u>Ameriquest Mortg. Co. v. Nosek</u>, 544 F.3d 34, 47 (1st Cir. 2008) (concluding that the terms of a plan allegedly violated by a creditor were not specific enough to

support an award of sanctions under section 105(a)).  Under the Administrative Procedures, Mr.

White was required to obtain his client's signature on an original petition and set of schedules

and statements, to retain those original documents, and to file through the ECF system an

electronic version of the documents signed by his client.  Instead, Mr. White affixed his client's

signature to a petition with a date that fell roughly one month after the day that his client signed

the petition.  He may have had his client's authority to commence the case.  But he did not have

an original copy of the petition signed and dated by the Debtor on December 12, 2018 and he

admitted as much at trial.  This conduct is similar to a prior episode of conduct before this Court

that resulted in a referral to disciplinary authorities.  That referral—which was made after Mr.

White submitted an affidavit in litigation purportedly, but not actually, signed by his client—

should have placed Mr. White on notice that this Court does not take lightly the representations

that an attorney makes when he submits a document purportedly signed by a client.

    Sanctions are appropriate here, where Mr. White's violation of the Administrative

Procedures resulted in the commencement of a case more than a month after the Debtor himself

signed the petition.  To vindicate this Court's authority to police electronic filings, the Court

imposes a civil sanction of $400 under section 105(a) and the Court's inherent powers, and

orders Mr. White to pay that sum to the Trustee.  Under the circumstances, payment of the

sanction to the Trustee is appropriate because it was his efforts that brought Mr. White's failure

to observe the requirements of the Administrative Procedures to the Court's attention.

    The other aspect of Mr. White's conduct in this case that merits sanction is his violation

of Rule 9011(b), which took place when he asserted a homestead exemption in Schedule C

without any factual or legal basis to make that assertion.  Rule 9011(c) provides that if Rule

9011(b) has been violated, the Court may—subject to certain conditions—impose an appropriate

sanction upon the person responsible for the violation.  Rule 9011(c) goes on to describe the

manner in which the question of compliance with Rule 9011(b) may be raised—either by motion

or on the court's own initiative—and to describe the nature of, and limitations on, any sanctions

imposed.

In certain respects, section 707(b)(4) reinforces Rule 9011.  In relevant part, the statute

provides that:

> (B) If the court finds that the attorney for the debtor violated rule 9011 of the
> Federal Rules of Bankruptcy Procedure, the court, . . . on the motion of a party in
> interest, in accordance with such procedures, may order—
>> (i) the assessment of an appropriate civil penalty against the attorney for
>> the debtor; and
>> (ii) the payment of such civil penalty to the trustee[.]
> . . .
> (D) The signature of an attorney on the petition shall constitute a certification that
> the attorney has no knowledge after an inquiry that the information in the
> schedules filed with such petition is incorrect.

11 U.S.C. § 707(b)(4)(B) & (D).  This statute has not garnered much attention in the caselaw.  Its

9011-like requirements confirm that chapter 7 debtor's counsel must undertake an inquiry as to

the information reported in the schedules and certify that the schedules are accurate based on the

knowledge acquired in that inquiry.  See id. § 707(b)(4)(D).  And the civil penalty provisions

amplify the sanctions provided in Rule 9011 by specifying that chapter 7 debtor's counsel may

be ordered to pay a civil penalty to the trustee.  Id. § 707(b)(4)(B).

A motion under Rule 9011 "may not be filed with or presented to the court" unless the

motion is first served on the party who allegedly violated the rule, and that party fails to

withdraw or correct the challenged claim.  Fed. R. Bankr. P. 9011(c)(1)(A).  This safe harbor is

designed to give the party accused of a rule violation notice and the opportunity to take

corrective action. *See* Fed. R. Civ. P. 11 Advisory Committee Notes to 1993 Amendment.[4]

Some courts view compliance with the safe harbor as a jurisdictional requirement; others view

the safe harbor as a defense capable of being waived. *See* 5A Fed. Prac. & Proc. Civ. § 1337.2 &

nn.12-13 (4th ed.) (collecting cases). Although the First Circuit has not definitively aligned with

either view, it has ruled that the safe harbor defense is waived for appellate purposes if not

seasonably raised before the trial court. *See* Nyer v. Winterthur, Int'l, 290 F.3d 456, 460 (1st

Cir. 2002); *but cf.* Lamboy-Ortiz v. Ortiz-Vélez, 630 F.3d 228, 245 (1st Cir. 2010) (citing, in

dicta, a decision in which the Ninth Circuit characterized the safe harbor as "mandatory").

Mr. White has belatedly claimed that the Rule 9011 safe harbor should shield him from

the imposition of sanctions. Mr. White did not raise the safe harbor when the motion was "filed

with or presented to" the Court. *See* Fed. R. Bankr. P. 9011(c). Instead, he waited until after

trial. He insists that the safe harbor should bar sanctions—even though he had advance notice of

the motion—because the unsupported homestead exemption in Schedule C was withdrawn when

successor counsel filed the amended Schedule C, and that amendment occurred before the

Trustee filed his motion for sanctions. He did not raise this issue in his written response to the

Trustee's motion, during the lengthy pretrial proceedings, or at trial. Instead, he conceded that

the Trustee gave him more than twenty-one days' notice of his intent to seek sanctions for

specific conduct by serving him with a copy of the sanctions motion substantially similar to that

filed. There is nothing in the record suggesting that, after the receipt of the draft sanctions

motion, Mr. White insisted that the motion should not be filed as drafted because Schedule C had

---

[4]    Because Rule 9011 and Fed. R. Civ. P. 11 are generally "couched in the same terms and have a
common etiology," the First Circuit has indicated that "Rule 11 jurisprudence is largely transferable to
Rule 9011 cases[.]" Featherston v. Goldman (In re D.C. Sullivan Co.), 843 F.2d 596, 598 (1st Cir. 1988).
In this order, the Court draws from Rule 11 jurisprudence and other commentary regarding Rule 11
freely, without pausing to say as much in each instance.

been amended.[5]  At trial, he argued that the homestead exemption claimed on the original

Schedule C was not violative of Rule 9011; he did not refer to the amended Schedule C.

While Mr. White apparently kept the safe harbor defense in his back pocket, the Court

conducted a trial and rendered a decision on the first bifurcated aspect of the matter.  The Trustee

pressed his position, incurring fees along the way, and the Court expended judicial resources

determining that Rule 9011 had been violated.  Now, after all of this effort, Mr. White trots out

the amended Schedule C and points back to the safe harbor.  This is not how litigation should

unfold.  Mr. White failed to raise the safe harbor in a seasonable manner and therefore waived its

protections.  *See generally* Winterthur, 290 F.3d at 460 (holding that the safe harbor defense is

waived for appellate purposes if not seasonably raised in the trial court).

To merit sanctions under Rule 9011, "it is not enough that the filer's claim lacked merit

— it must be so plainly unmeritorious as to warrant the imposition of sanctions."  *See* Eldridge v.

Gordon Bros. Grp., 863 F.3d 66, 88 (1st Cir. 2017) (quotation marks omitted).  With respect to

the original Schedule C, this test is met.  As the Court previously determined, "[t]here was no

reasonable basis for Mr. White to believe that either the Debtor or his dependents lived in the

Property or had any present intention to move to the Property such that the claimed residence

exemption might be justified under any legal theory."  [Dkt. No. 74, p. 8.]  In addition, "there

was an obvious conflict between the residence exemption claimed on Schedule C" and the other

documents Mr. White filed in the case.  Id.  The claimed exemption was not a close call; it was

the product of Mr. White's careless preparation of documents that were filed with the Court.

In deciding whether to impose sanctions, and what an appropriate sanction would be, a

number of factors may be properly considered, including:

---

[5]   The filing of the amended Schedule C would not have insulated Mr. White from the Trustee's motion
entirely, because that motion also alleged rule violations with respect to other documents filed in the case.

> Whether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; [and] what amount is needed to deter similar activity by other litigants[.]

Fed. R. Civ. P. 11 Advisory Committee Notes to 1993 Amendment.  A few of these factors weigh against the imposition of significant sanctions in this case.  Mr. White did not willfully claim an exemption that lacked any basis in fact or law, and he did not claim the residence exemption with the intent to injure any other party; he did so negligently, without taking the proper care to ensure that the document he filed accurately reflected the information in his possession.  When the other factors are considered, however, the balance tips in the Trustee's favor.  Mr. White's lack of care in the preparation of documents filed with the Court was a part of a larger pattern, and he did engage in similar conduct in other litigation, that ultimately led to his suspension from the practice of law.  He was trained in the law, and he routinely failed to treat his obligations to the Court with a sufficient measure of seriousness.  Although sanctions may not be necessary to deter similar conduct by Mr. White, either in this case or generally, sanctions are warranted to deter similar activity by other litigants.[6]

As for the extent of a sanction imposed for violation of Rule 9011(b), it must "be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated."  Fed. R. Bankr. P. 9011(c)(2).  Such a sanction may consist of, or include, nonmonetary directives, "an order to pay a penalty into court, or, if imposed on motion and

---

[6]    Mr. White has completed his suspension from the practice of law, but he must be reinstated before resuming practice in the State of Maine.  He has represented that he has no present intention to return to practice.  But intentions can change over time and it is at least possible that Mr. White may seek reinstatement.  In light of that possibility, however likely or remote, an award of sanctions against Mr. White may serve some deterrent effect as to him.

warranted for effective deterrence, an order directing payment to the movant of some or all of the

reasonable attorneys' fees and other expenses incurred as a direct result of the violation." Id.

Two variables determine the appropriateness of a particular sanction: the facts presented

and the purpose of the sanction. Anderson v. Beatrice Foods Co., 900 F.2d 388, 394 (1st Cir.

1990). The purpose of sanctions under Rule 9011 is deterrence. See Fed. R. Civ. P. 11 Advisory

Committee Notes to 1993 Amendment. Monetary sanctions designed to serve the purpose of

deterrence are constrained by parameters of proportionality. See Navarro-Ayala v. Nunez, 968

F.2d 1421, 1427 (1st Cir. 1992). A "monetary sanction aimed at deterrence is appropriate only

when the amount of the sanction falls within the minimum range reasonably required to deter the

abusive behavior." Id.

"As a deterrent, sanctions speak largely to systemic concerns." Anderson, 900 F.2d at

394. In the bankruptcy system, the accuracy of the information presented in the schedules is

paramount. Counsel must undertake a reasonable inquiry, and then incorporate the information

obtained through that inquiry into the schedules filed with the Court. Imposing sanctions here

will further the object of general deterrence by reinforcing the seriousness of the obligations

undertaken by debtors' counsel when making written representations to the Court in the form

schedules filed with every chapter 7 case. Cf. Ameriquest Mortg. Co. v. Nosek (In re Nosek),

609 F.3d 6, 9 (1st Cir. 2010) ("Bankruptcy courts have a legitimate interest in policing the filings

submitted, and sanctions can sometimes serve a useful function in this endeavor.").

The Trustee asserts that he incurred more than $10,000 in fees to prosecute his motion,

and he seeks a sanction in that amount. Because this matter was initiated by motion, and

sanctions are warranted for effective deterrence, the sanction may consist of an order directing

payment of "some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." Fed. R. Bankr. P. 9011(c)(2).

A sanction in the form of an order directing Mr. White to pay some of the Trustee's reasonable fees is fitting. A non-monetary sanction such as a reprimand, mandatory continuing legal education, or a referral to disciplinary authorities would lack utility because Mr. White has been suspended from, and apparently does not intend to reapply for admission to, the bar. And, unless the Trustee is compensated for at least some of his efforts, it is unlikely that in future cases, the Trustee—or others similarly situated—will bring violations of Rule 9011 to the Court's attention in cases like this one.

Under the circumstances, the Court orders Mr. White and his former firm to pay a civil sanction of $6,600 under section 707(b)(4)(B) and Rule 9011(c). Notwithstanding Mr. White's contentions to the contrary, the Court concludes that it is unnecessary to precisely separate the fees directly tied to the Rule 9011 violations that the Trustee did not prove at trial from those tied to the Rule 9011 violation that he did prove at trial. At the blended hourly rate of $320 per hour, it would have taken the Trustee nearly twenty-one hours to bring his total fees up to $6,600. This contested matter was initiated by the Trustee's fourteen-page motion [Dkt. No. 28] and involved five hearings prior to trial: (1) the initial hearing that ran more than twenty-four minutes [Dkt. No. 36]; (2) two hearings that collectively ran for about an hour [Dkt. No. 53 & 57] on the Trustee's related motion to compel the disclosure of allegedly privileged communications [Dkt. No. 46] and the Debtor's motion to modify a subpoena [Dkt. No. 42]; (3) a pretrial hearing that ran more than seven minutes [Dkt. No. 63]; and (4) another hearing regarding a discovery dispute that ran more than twenty-three minutes [Dkt. No. 67]. The Trustee dutifully filed a detailed witness and exhibit list [Dkt. No. 68], participated in preparation of the exhibit binders

for trial, and participated in a trial that ran nearly four hours, including a lunch break, plus travel

time to and from Bangor [Dkt. No. 70-72].  He also participated in two post-trial hearings that

collectively ran more than thirty-three minutes [Dkt. No. 78 & 84], conducted additional

discovery *see* [Dkt. No. 80], compiled and filed a stipulated post-trial record [Dkt. No. 86], and

submitted a detailed, eleven-page memorandum of law in support of the motion [Dkt. No. 87].

Even if the Trustee's motion had been predicated solely on the baseless residence exemption,

and had not addressed any other issues, it would have taken him at least twenty-one hours to

prosecute his motion through the pretrial, trial, and post-trial stages that have defined the path of

this contested matter.

        More detailed proration of the Trustee's fees to the point of the clarity of an audit is

impracticable.  If the Court were to review a billing detail under the familiar rubric supplied by

11 U.S.C. § 330, many of the entries there would almost certainly relate to tasks that the Trustee

would have pursued even if the sole arrow in his quiver was the claimed homestead exemption.

*Cf.* Goodyear Tire & Rubber Co. v. Haeger, 137 S. Ct. 1178, 1187 (2017) ("The essential goal in

shifting fees is to do rough justice, not to achieve auditing perfection.") (quotation marks

omitted).

        In imposing a lesser sanction than that sought by the Trustee, the Court is mindful of the

rule at issue.  A sanction for violation of Rule 9011 may take the form of an "order directing

payment to the movant of *some or all* of the reasonable attorneys' fees and other expenses

incurred as a direct result of the violation."  Fed. R. Bankr. P. 9011(c)(2) (emphasis added).  The

Court is also mindful of several factors.  First, Mr. White prepared the Schedule C with culpable

carelessness, but he did not subjectively intend to mislead the Court, the Trustee, or creditors.

*See generally* In re Nosek, 609 F.3d at 10 (suggesting that subjective intent should be considered

in fashioning a sanction).  Second—other than the fees incurred by the Trustee in his pursuit of

this matter—no prejudice has befallen any party, the estate, or the Court in consequence of the

unsupported claim of a homestead exemption.  *See* id. (suggesting that prejudice caused by the

sanctionable conduct should also factor into the amount of the sanction imposed).  Third, the

unsupported claim has, in fact, been withdrawn by the filing of the amended Schedule C.  Fourth,

Mr. White has lost his law license, and it is fair to infer that his income may have declined since

his suspension.  All of these factors, including a concern about Mr. White's ability to pay the

sanction imposed, lead to a belief that it is appropriate to award some, but not all, of the

Trustee's legal fees.

That said, the sanction of $6,600 is justified not only by Mr. White's deficient practices

in this case, but by their part in a longstanding pattern.  Over the course of several years, Mr.

White failed to communicate effectively with certain clients, and that failure resulted in

disciplinary action.  He was sanctioned on multiple occasions for failing to observe deadlines

and orders.  He failed to accurately disclose his compensation for work as chapter 11 counsel on

a routine bankruptcy form, in violation of certain rules of procedure, and then agreed to sanctions

when the matter was brought to the attention of this Court.

That the conduct at issue in this case features into a larger pattern of deficient practice is

a factor that the Court may appropriately consider in fashioning an appropriate sanction.  *See*

Anderson, 900 F.2d at 394 ("The trial judge is best positioned to decide what sanction . . . best

responds to a particular episode or pattern of errant conduct.").  A pattern of that nature speaks to

Mr. White's state of mind and conduct as an officer of the Court.  Mr. White cannot wield his

suspension as a shield from this Court's consideration of his prior disciplinary history.  Yes, Mr.

White was suspended from the practice of law for a period, but that period of suspension is now

over, and he may now be eligible to reapply—even if he does not intend to do so.  Finally, considering Mr. White's prior disciplinary history does not result in an impermissible double-punishment for the same conduct, despite his contentions to the contrary.  The "purpose of lawyer discipline is not punishment but protection of the public and the courts[.]"  Bd. of Overseers of the Bar v. Carey, 215 A.3d 229, 240 (Me. 2019).

In sum, a sanction of $6,600 payable to the Trustee is appropriate to deter other attorneys from forging ahead with a filing without taking the time necessary to verify that the claims presented to the Court have some basis in fact and law.[7]

### CONCLUSION

Mr. White shall pay a total of $7,000 to the Trustee as a civil sanction in this matter.  The parties shall have twenty-eight days to attempt to agree upon a schedule for payment of the sanctions.  Within that time period, they must either file a statement regarding and identifying the agreed schedule or a request for the Court to convene one or more hearings for the purpose of setting a schedule of payments in light of Mr. White's current and anticipated income and expenses.

Dated: November 20, 2020        _____
                                Michael A. Fagone
                                United States Bankruptcy Judge
                                District of Maine

---

[7]    If the Court had not imposed a separate civil sanction the amount of $400 for Mr. White's violation of the Administrative Procedures, the sanction for his violation of Rule 9011 would have been greater than $6,600.  Using any type of familiar lodestar analysis yields reasonable legal fees of at least $7,000 for the Trustee.